ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| CARMEN MILAGROS LEÓN SANTIAGO<br><br>Parte Apelante<br><br>v.<br><br>HOTEL ALOFT PONCE, ET. AL.<br><br>Parte Apelada | TA2026AP00141 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.:<br>PO2022CV02374<br><br>Sala: 601<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 20 de febrero de 2026.

Compareció ante este Tribunal la parte apelante, la Sra. Carmen Milagros León Santiago (en adelante, "señora León Santiago" o "Apelante"), mediante un recurso de apelación presentado el 9 de febrero de 2026. Nos solicitó la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (en adelante, "TPI"), el 10 de diciembre de 2025. Mediante el referido dictamen, el TPI declaró "Ha Lugar" la "**Moción Solicitando Sentencia Sumaria**" presentada por el Hotel Aloft Ponce (en adelante, "Hotel Aloft" o "Apelado"). Como consecuencia, el TPI desestimó, con perjuicio, la "**Demanda**" presentada por la Apelante. Posteriormente, el Apelado presentó un memorando de costas que fue declarada "Ha Lugar" mediante *Resolución Interlocutoria* dictada por el foro apelado el 18 de diciembre de 2025.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada. Por otro lado, *modificamos* la *Resolución Interlocutoria* emitida el 18 de diciembre de 2025 y así modificada, se *confirma*.

## I.

El presente caso se remonta al 25 de agosto de 2022, fecha en que la señora León Santiago presentó una "**Demanda**" en contra del Hotel Aloft y varios codemandados de identidad desconocida, sobre daños y perjuicios. En su escrito alegó que, el 29 de octubre de 2021, en horas de la noche, mientras salía del hotel se cayó por una rampa. Detalló que ésta tenía un material resbaloso y que no tenía barandas o protección que pudiera haber evitado su caída. Agregó que, como consecuencia, sufrió golpes en distintas partes del cuerpo, lo cual requirió asistencia de los paramédicos. Expuso que, más tarde, visitó la Sala de Emergencias del Hospital Damas y recibió tratamiento médico. En vista de lo anterior, la Apelante sostuvo que el Hotel Aloft fue negligente y solicitó el pago de trescientos mil dólares ($300,000.00) por sufrimientos, angustias mentales y/o impedimentos y/o incapacidad mental, más trescientos mil dólares ($300,000.00) por los daños físicos e impedimentos y/o incapacidad física.

Así las cosas, el 7 de marzo de 2023, el Apelado presentó su "**Contestación a Demanda**", en la cual informó que el hotel contaba con todas las medidas de seguridad pertinentes. Sostuvo que no existía ninguna condición de peligrosidad que diera paso a los daños alegados por la Apelante. Finalmente, señaló que la señora León Santiago no presentó evidencia alguna sobre los cuidados recibidos en la sala de emergencias.

Luego de varias incidencias procesales, el 11 de agosto de 2025, el Hotel Aloft presentó una "**Moción Solicitando Sentencia Sumaria**", mediante la cual alegó que no existía ninguna controversia de hechos que impidiera la disposición del caso sumariamente. En síntesis, argumentó que la noche de la visita, ni la señora León Santiago, ni su acompañante, observaron ningún tipo de condición de peligrosidad en el área de la rampa. De igual forma, sostuvo que se reconoció en las alegaciones de la Apelante, que ésta no tenía conocimiento sobre qué era la sustancia que se encontraba en el área ni cuánto tiempo llevaba en el lugar. Asimismo, arguyó que tampoco demostró que el hotel tuviera conocimiento o que debió haber conocido sobre la alegada condición de peligrosidad. De modo

que, expresó que no existía prueba alguna, aparte de su propio testimonio, que evidenciara las condiciones inadecuadas de la rampa o que pudiera validar que la caída se debió a una sustancia en el suelo. Como consecuencia, solicitó la desestimación, con perjuicio, de la "**Demanda**" instada en su contra.

Posteriormente, el 17 de septiembre de 2025, la señora León Santiago presentó su "**Oposición a Moción de Sentencia Sumaria**" (en adelante, "Oposición") en la cual se limitó a establecer la controversia de algunos hechos propuestos por el Apelado. Argumentó que la rampa que utilizó estaba forrada de un material resbaloso, construido en plástico, que había un líquido y que no contaba con advertencias o antideslizantes, barandas o pasamanos que le permitieran apoyarse. Insistió en que, la teoría del Apelado invitaba a disponer de esta controversia sin tan siquiera proveer una fotografía del lugar, testigos o videos de lo que ocurrió esa noche.

Así las cosas, el 25 de septiembre de 2025, el Hotel Aloft presentó una "**Dúplica**" en la cual señaló que la Apelante simplemente descansó en las aseveraciones sostenidas en sus alegaciones. Indicó que la prueba que acompañaba a su *Oposición* consistió en la declaración jurada de la propia señora León Santiago, la cual fue suscrita el mismo día que se presentó su escrito. Informó que la declaración jurada era completamente opuesta a lo manifestado por la Apelante durante la toma de su deposición. Explicó que, a esto se le conoce como *sham affidavit* y, a menos de que se ofrezca una razón por la cual el testimonio cambió, el foro primario estaba impedido de considerarla.

Por su parte, el 14 de octubre de 2025, la señora León Santiago presentó una "**Moción Reiterando Oposición a Moción de Sentencia Sumaria**" (en adelante, "Moción Reiterando Oposición") mediante la cual expuso que la *Dúplica* del Apelado no aportaba nada adicional a la controversia. Insistió en que no se señalaron las alegadas contradicciones de sus testimonios porque estas son inexistentes. Por otro lado, adujo que el Hotel Aloft presentó los anejos a su solicitud de sentencia sumaria de

manera incompleta, lo cual inducía al tribunal a error. Específicamente, detalló que, en la Contestación a Interrogatorio del Sr. Víctor Vega, gerente del Hotel Aloft, no se incluyó la documentación en la que se apoyan las contestaciones, lo cual no debía ser considerado como un hecho incontrovertido. Reiteró que el hotel tampoco cuenta con testigos, fotografías o videos de la caída.

Posteriormente, el 10 de diciembre de 2025, el TPI emitió una *Sentencia* en la cual declaró "Ha Lugar" la solicitud de sentencia sumaria presentada por el Apelado, por entender que no existían hechos materiales en controversia que impidieran la disposición del litigio. Concluyó que la Apelante no demostró cuál fue el acto culposo o negligente del hotel y el nexo causal entre éste y el daño sufrido. Más aún, detalló que, al ser un establecimiento comercial, la señora León Santiago tampoco estableció la condición de peligrosidad y que el Hotel Aloft hubiera tenido conocimiento sobre la misma o debió haberlo sabido. Señaló que, según surge del "**Informe Preliminar entre Abogados**", discutido durante la *Conferencia con Antelación a Juicio,* la evidencia de la Apelante consistía únicamente de su testimonio. Sostuvo que la señora León Santiago venía llamada a demostrar su causa de acción, sin embargo, no pudo poner en condiciones al tribunal de que poseía evidencia testifical o documental que permitiera concluir la existencia de un acto culposo o negligente.

Consecuentemente, el 18 de diciembre de 2025, el Apelado presentó un "**Memorando de Costas bajo las Disposiciones de la Regla 44.1 (a) y (b) de Procedimiento Civil de Puerto Rico**" (en adelante, "Memorando de Costas") por la cantidad de tres mil novecientos ochenta y cuatro dólares con cincuenta centavos ($3,984.50). En ésta, incluyó los gastos de la transcripción de la deposición y honorarios del Dr. William Acevedo, perito de la Apelante; los honorarios del Dr. Eric Javier, perito del Apelado; gastos por la transcripción de la señora León Santiago y los gastos de los sellos de la primera comparecencia ante el foro de instancia. Insistió en que las deposiciones fueron necesarias para prevalecer en la

solicitud de sentencia sumaria y para evaluar la veracidad del perito de la señora León Santiago.

El mismo día, el TPI concedió la cantidad solicitada en el *Memorando de Costas.*

Inconforme, el 23 de diciembre de 2025, la Apelante presentó una "**Moción en Relación a Resolución Aprobando Memorando de Costas**" en la cual señaló que el TPI no podía disponer de la moción sin que este presentara su postura. En esta misma fecha, presentó un documento intitulado "**Impugnación de Memorando de Costas**" mediante el cual señaló que los gastos con relación a los peritos, ascendientes a tres mil catorce dólares con cincuenta centavos ($3,014.50), no eran procedentes, toda vez que el Apelado debía demostrar que el testimonio de estos peritos era necesario para que su teoría prevaleciera. Sostuvo que la *Sentencia* del TPI no dispuso sobre los daños ante su consideración, por lo que era innecesario el testimonio de los galenos para probar su argumento. De modo que estos gastos no eran recobrables por el Hotel Aloft.

Al día siguiente, la Apelante presentó su "**Moción de Reconsideración**" en la cual insistió que el foro de instancia no tuvo ante sí todos los elementos necesarios para realizar la adjudicación. Específicamente, señaló que la deposición de la señora León Santiago constaba de ciento ochenta (180) páginas, de las cuales solamente se presentaron veintidós (22) páginas. Insistió en que el Apelado nunca limitó cuáles eran las contradicciones existentes en la declaración jurada, sino que el TPI *motu proprio* realizó este ejercicio. Mencionó que, de haber tenido su día en corte, la Apelante se proponía a presentar el testimonio del Sr. Víctor Vega, gerente del Hotel Aloft, quien observó la rampa el día de la caída. Por último, sobre los *exhibits* mencionados en la contestación a interrogatorio, indicó que estos no fueron presentados en la *Moción Solicitando Sentencia Sumaria*, lo cual provocó que se indujera al tribunal a error.

El TPI emitió una *Resolución Interlocutoria*, con fecha de 8 de enero de 2026, notificada al día siguiente, mediante la cual declaró "No Ha Lugar"

a ambas solicitudes presentadas por la Apelante. Insatisfecha, la señora León Santiago presentó ante nuestra consideración el recurso de apelación que nos ocupa. Mediante el mismo, le imputó al foro primario la comisión de los siguientes errores:

PRIMER SEÑALAMIENTO DE ERROR:

"Erró el Tribunal de Primera Instancia al desestimar sumariamente sin celebración de Juicio la totalidad de la reclamación de la demandante"

SEGUNDO SEÑALAMIENTO DE ERROR:

"Erró el Tribunal de Primera Instancia al aprobar el Memorando de Costas"

El 20 de febrero de 2026, compareció el Hotel Aloft mediante "**Alegato en Oposición a Apelación**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". Batista Valentín v. Sucn. Batista Valentín, 216 DPR ___; 2025 TSPR 93. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3; Negrón Castro y otros v. Soler Bernardini y otros, 216 DPR ____ (2025); 2025 TSPR 96.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o

documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal cuente con la verdad de todos los hechos necesarios para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 678.

Por su parte, la parte promovida por una moción de sentencia sumaria debe señalar y refutar los hechos materiales que entiende están en controversia y que son constitutivos de la causa de acción del demandante. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020); Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Oriental Bank v. Caballero García, *supra*, pág. 8; Roldán Flores v. M. Cuebas *et al.*, 199 DPR 664, 677 (2018).

Adicionalmente, en <u>León Torres v. Rivera Lebrón</u>, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición. Así que, según lo expresa el propio tribunal, "la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión". <u>Íd</u>., pág. 54.

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. <u>Abrams Rivera v. ELA, DTOP y otros</u>, 178 DPR 914, 932 (2010).

Atinente a la controversia que nos ocupa, procede la resolución sumaria por insuficiencia de la prueba cuando, al concluir un descubrimiento de prueba, se desprende que la prueba que existe es insuficiente o inadecuada para sostener las alegaciones de la demanda y los elementos esenciales de la reclamación, por lo que corresponde desestimarla. <u>Medina v. M.S. & D. Química P.R., Inc.</u>, 135 DPR 716, 733 (1994); <u>Pérez v. El Vocero de P.R.</u>, 149 DPR 427, 447 (1999).

En tal caso, el promovente debe demostrar que: (1) la vista es innecesaria; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial de su causa de acción; y (3) como cuestión de derecho, procede la desestimación de la reclamación. Para disponer de una solicitud bajo esta modalidad, es indispensable que la parte promovida haya tenido oportunidad amplia para efectuar un descubrimiento de prueba adecuado. <u>Ramos Pérez v. Univisión</u>, *supra*, págs. 217-218.

Ahora bien, para derrotar una moción de sentencia sumaria bajo la modalidad de insuficiencia de la prueba, la parte promovida puede

presentar: (a) prueba admisible en evidencia; (b) prueba que pudiera ser admisible, aunque al momento no lo sea; (c) prueba que demuestre que existe evidencia para probar los elementos esenciales de su caso; o (d) señale que hay prueba en el récord que pudiera ser admisible y derrotaría la contención de insuficiencia. A su vez, la parte promovida puede demostrar que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado; o que, por su naturaleza, se trata de un caso en el que no es conveniente que se resuelva por el mecanismo de la sentencia sumaria. Medina v. M.S. & D. Química P.R., Inc., *supra*, pág. 734.

Esta normativa está cimentada en que el demandante tiene que probar su teoría y si no cuenta con prueba luego de culminar el descubrimiento de prueba, no se justifica llegar a etapa de juicio. Por ende, ante una moción de sentencia sumaria bajo la modalidad de insuficiencia de prueba, la parte promovida tiene que presentar su oposición de manera fundamentada. García Rivera *et al.* v. Enríquez, 153 DPR 323, 340 (2001); Ramos Pérez v. Univisión, *supra*, pág. 219.

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo

deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. <u>Vera v. Dr. Bravo</u>, 161 DPR 308, 335 (2004)*.* De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. <u>Íd</u>. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. <u>Íd</u>. págs. 334-335.

En <u>Meléndez González *et al.* v. M. Cuebas</u>, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. <u>Íd</u>., págs. 118-119.

Conviene desde ahora destacar que el Tribunal Supremo también ha expresado que es desaconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia. <u>Ramos Pérez v. Univisión de P.R</u>, 178 DPR 200, 2019 (2010); <u>Carpets & Rugs v. Tropical Reps</u>, 175 DPR 615, 638 (2009). No obstante, "cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales" nada impide que se utilice la sentencia sumaria en casos donde existen elementos subjetivos o de intención. <u>Ramos Pérez v. Univisión de P.R,</u> *supra*, pág. 219.

Cabe resaltar que, nuestro máximo foro judicial ha sido enfático al resolver que los hechos debidamente enumerados en una moción de sentencia sumaria sobre los cuales la parte promovente de dicho mecanismo procesal sostiene que están incontrovertidos deben hacer referencia a prueba documental admisible en juicio. Pérez v. Univisión de PR, supra, pág. 221.

El Tribunal Supremo ha adoptado dos (2) modalidades de la doctrina del "sham affidavit", a saber: por omisión y por contradicción. Lugo Montalvo v. Sol Meliá Vacation, 194 DPR 209 (2015). En su vertiente por contradicción, se determinó que aplica en las siguientes circunstancias:

> (1) una parte ha sido examinada mediante preguntas precisas y libres de ambigüedad y ha respondido en detalle durante una deposición o ha prestado previamente una declaración clara e inequívoca bajo juramento; (2) al momento de oponerse a la solicitud de sentencia sumaria esa parte presenta una declaración posterior cuyo contenido es claramente incompatible con la versión ofrecida; (3) la incompatibilidad entre las dos declaraciones resulta evidente, manifiesta o patente, y no se trata de meras discrepancias de poca transcendencia o errores de buena fe; (4) no se ofrece explicación adecuada para la nueva versión, y (5) la declaración posterior no responde al descubrimiento de nueva evidencia, la cual a pesar de una diligencia razonable, no pudo descubrirse o no estuvo disponible al momento en que se prestó la declaración previa incompatible. Íd., págs. 221-222.

Es menester aclarar que la justificación que brinde el proponente no debe descansar en meras ambigüedades o planeamientos estereotipados, pues una parte que declaró bajo juramento tiene una carga considerable cuando pretende deshacerse de una declaración previa. Íd., pág. 222. Así pues, el Tribunal Supremo ha establecido que permitir este tipo de declaración jurada es contrario al objetivo que persigue la Regla 36 de Procedimiento Civil, *supra.* SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 441 (2013). Puesto que **es en el momento de la oposición que el proponente tiene las puertas del tribunal abiertas para demostrar que sus contradicciones no son simuladas; precisamente, ese es su día en corte.** Lugo Montalvo v. Sol Meliá Vacation, *supra*, pág. 222.

**B.**

Dispone el Artículo 1536 del Código Civil de 2020, en su parte pertinente, que "[la] persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". 31 LPRA sec. 10801. En cuanto a este precepto y su aplicación, se ha establecido que sólo procede la reparación de un daño cuando se demuestren los siguientes elementos indispensables: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. Inmob. Baleares *et al.* v. Benabe *et al.*, 214 DPR 1109, 1125 (2024); Nieves Díaz v. González Massas, 178 DPR 820, 843 (2010).

En particular, el concepto de daños ha sido definido como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". López v. Porrata Doria, 169 DPR 135, 151 (2006). En esa misma línea doctrinal, se ha establecido que la culpa o negligencia es la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto o la omisión de un acto, que una persona prudente y razonable habría previsto en las mismas circunstancias. Nieves Díaz v. González Massas, *supra*, pág. 844; Rivera v. S.L.G. Díaz, 165 DPR 408, 421 (2005); Toro Aponte v. E.L.A., 142 DPR 464, 473 (1997); Ramos v. Carlo, 85 DPR 353, 358 (1962). Respecto a la relación causal, ésta es un componente imprescindible en una reclamación en daños y perjuicios, ya que "es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico." Rivera v. S.L.G. Díaz, *supra*, pág. 422. Del daño culposo o negligente surge el deber de indemnizar que "presupone nexo causal entre el daño y el hecho que lo origina, pues sólo se han de indemnizar los daños que constituyen una consecuencia del hecho que obliga a la indemnización". López v. Porrata Doria, *supra*, pág. 151.

Esto último se refiere a la teoría de causalidad adecuada que rige en nuestro ordenamiento. De acuerdo a ella, no es causa toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo

produce según la experiencia general. <u>Montalvo v. Cruz</u>, 144 DPR 748, 756 (1998). La jurisprudencia ha sostenido que un daño parece ser el resultado natural y probable de un acto negligente, si después del suceso y mirando retroactivamente dicho acto, tal daño aparece como la consecuencia razonable y ordinaria del acto**.** <u>Torres Trumbull v. Pesquera</u>, 97 DPR 338, 343 (1969); <u>Estremera v. Inmobiliaria RAC, Inc.</u>, 109 DPR 852, 856 (1980). El principio de causalidad adecuada requiere que en todo caso de daños y perjuicios el demandante pruebe que la negligencia del demandado fue la que con mayor probabilidad causó el daño sufrido. <u>Parrilla Báez v. Ranger American of P.R.</u>, 133 DPR 263, 270 (1993). De esta forma, un demandado responde en daños si su negligencia por su acción u omisión es la causa próxima del daño, aun cuando no sea la única causa del daño. <u>Velázquez v. Ponce</u>, 113 DPR 39, 45 (1982). Por tanto, la cuestión se reduce a determinar si la ocurrencia del daño era de esperarse en el curso normal de los acontecimientos o si, por el contrario, queda fuera de ese posible cálculo.

En lo referente a los casos de caídas en establecimientos comerciales, la jurisprudencia del Tribunal Supremo ha sido contundente al establecer que:

> No hay duda de que una persona o empresa que opera un establecimiento abierto al público con el objeto de llevar a cabo operaciones comerciales para su propio beneficio debe hacer lo posible por mantener dicho establecimiento en condiciones tales de seguridad que los clientes que patrocinen el mismo no sufran ningún daño; en otras palabras, **corresponde al dueño de un negocio o al propietario del mismo mantener el área a la que tienen acceso sus clientes como un sitio seguro**. <u>Cotto Guadalupe v. C.M. Ins.</u>, 116 DPR 644, 650 (1985) (énfasis suplido).

No obstante, el dueño del establecimiento "no es un asegurador de la seguridad de los clientes del negocio, y su deber sólo se extiende al ejercicio del cuidado razonable para su protección". <u>Íd</u>. Por ello, es imprescindible que el promovente de la causa de acción pruebe que el dueño del establecimiento no "ha ejercido el cuidado debido para que el local sea seguro para él". <u>Íd</u>. Así pues, la responsabilidad de los dueños de establecimientos comerciales se circunscribe a determinar la existencia de condiciones peligrosas y si las mismas eran de conocimiento de los

propietarios o su conocimiento podía imputárseles a éstos. Colón y otros v. K-Mart y otros, 154 DPR 510, 519 (2001).

Así pues, se desprende que, bajo este tipo de situaciones, el propietario o dueño tiene el deber de mantener el área a la que tienen acceso sus clientes como un sitio seguro. Goose v. Hilton Hotels, 79 DPR 523, 528 (1956). Para poder prevalecer en su causa de acción, el demandante tiene que probar que su daño se debió a la existencia de una condición peligrosa, que esa condición fue la que con mayor probabilidad ocasionó el daño y que la misma era conocida por el demandado o que debió conocerla. Admor. F.S.E. v. Almacén Román Rosa, 151 DPR 711, 725 (2000); Colón y otros v. K-Mart y otros, *supra*, pág. 519.

Dicho deber de cuidado incluye tanto la obligación de anticipar el riesgo, como la de evitar la ocurrencia de daños, cuya probabilidad es razonablemente previsible. En cuanto al deber de anticipar un riesgo, el Tribunal Supremo de Puerto Rico ha señalado lo siguiente:

> [L]a regla de anticipar el riesgo no se limita a que el riesgo o las consecuencias exactas debieron ser previstas. Lo esencial es que se tenga el deber de prever en forma general consecuencias de determinadas clases [...]. Ginés v. A.A.A., 86 DPR 518, 524 (1962).

> El deber de previsión se extiende a aquel peligro que llevaría a una persona prudente y razonable a anticiparlo. Hernández v. La Capital, 81 DPR 1031, 1038 (1960).

> [L]a negligencia por omisión surge al no anticipar aquellos daños que una persona prudente y razonable podría racionalmente prever que resultarían de no cumplirse con el deber. Dicho de otro modo, "un daño no genera una causa de acción por negligencia, si dicho daño no fue previsto, ni pudo haber sido razonablemente anticipado por un hombre prudente y razonable." Herminio Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, Publicaciones JTS, 1989, pág. 185.

Reiteradamente, la jurisprudencia ha reconocido la falta de previsión como base para la responsabilidad civil extracontractual. En Santiago Colón v. Supermercados Grande, 166 DPR 796 (2006), el Tribunal Supremo reiteró lo siguiente:

> Habida cuenta de lo anterior, la norma en estos casos establece que si la omisión del alegado causante del daño quebranta un deber impuesto o reconocido por ley de ejercer -- como haría un hombre prudente y razonable -- aquel grado de cuidado, diligencia, vigilancia, y precaución que las

circunstancias le exigen y el daño causado se debió a dicho deber omitido cabrá imponer responsabilidad al causante.

Entre los deberes de actuar se encuentra el de cuidado. Este deber incluye, "tanto la obligación de anticipar como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible. Pero la regla de anticipar el riesgo no se limita a que el riesgo preciso o las consecuencias exactas arrostradas debieron ser previstas. Lo esencial es que se tenga el deber de prever en forma general consecuencias de determinada clase."

Para poder determinar lo que constituye un daño razonablemente previsible debemos acudir a la conocida figura del hombre prudente y razonable según definida en nuestra jurisprudencia. Como resultado de lo anterior, en el pasado hemos resuelto que "el deber de previsión no se extiende a todo peligro inimaginable que concebiblemente pueda amenazar la seguridad sino aquél que llevaría a una persona prudente a anticiparlo. Íd., pág. 808 (citas omitidas).

En las acciones de responsabilidad civil extracontractual, le corresponde al demandante el peso de la prueba. Berio v. Royal, 164 DPR 797, 804 (2005). Como regla general, le corresponde a la parte actora en un caso de daños y perjuicios, donde alegue haber sufrido daños como consecuencia de la negligencia de la parte demandada, el peso de la prueba sobre la alegada negligencia. Cotto v. C.M. Ins. Co., 116 DPR 644, 650-651 (1985). Es decir, "la parte demandante tiene la obligación de poner al tribunal en condiciones de poder hacer una determinación clara y específica sobre la negligencia mediante la presentación de prueba a esos efectos". Íd.

## C.

Las costas se refieren a los gastos necesariamente incurridos en la tramitación de un pleito o procedimiento que un litigante debe reembolsar a otro por mandato de ley o por determinación discrecional del juez. García Rubiera v. Asociación, 165 DPR 311, 322 (2005). La Regla 44.1 de Procedimiento Civil regula lo concerniente a la concesión de costas. Esta dispone lo siguiente:

(a) Su concesión. Las costas se concederán a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder un tribunal son los gastos en que se incurra necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte debe reembolsar a la otra. 32 LPRA Ap. V, R. 44.1.

La aludida Regla tiene dos propósitos: (1) reponer lo que una parte perdió por ser obligada a litigar y sancionar la litigación inmeritoria, temeraria o viciosa. Rosario Domínguez *et als.* v. ELA *et al.*, 198 DPR 197, 211 (2017). Una vez solicitadas, la imposición de costas a favor de la parte victoriosa es mandatoria. Maderas Tratadas v. Sun Alliance *et al.*, 185 DPR 880, 934 (2012). Sin embargo, su otorgamiento no ocurre automáticamente, ya que es necesario la presentación de un memorando de costas en el que se detallen los gastos incurridos. Rosario Domínguez *et als.* v. ELA *et al.*, *supra*, pág. 212. El foro de instancia posee amplia discreción para evaluar la razonabilidad y determinar la necesidad de los gastos detallados. Maderas Tratadas v. Sun Alliance *et al.*, *supra*, pág. 935.

Asimismo, la Regla 44.1 de Procedimiento Civil, *supra*, en su inciso (c), especifica la forma en que se concederán las costas. Ésta indica lo siguiente:

> (b) Cómo se concederán. La parte que reclame el pago de costas presentará al tribunal y notificará a la parte contraria, dentro del término de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia, una relación o memorándum de todas las partidas de gastos y desembolsos necesarios en que se incurrió durante la tramitación del pleito o procedimiento. El memorándum de costas se presentará bajo juramento de parte o mediante una certificación del abogado o de la abogada, y consignará que, según el entender de la parte reclamante o de su abogado o abogada, las partidas de gastos incluidas son correctas y que todos los desembolsos eran necesarios para la tramitación del pleito o procedimiento. Si no hubiese impugnación, el tribunal aprobará el memorándum de costas y podrá eliminar cualquier partida que considere improcedente, luego de conceder a la parte solicitante la oportunidad de justificarlas. 32 LPRA Ap. V, R. 44.1.

En lo que respecta a la concesión de costas, no todos los gastos derivados del litigio son reembolsables. Maderas Tratadas v. Sun Alliance *et al.*, *supra*, pág. 935. La Regla 44.1 de Procedimiento Civil, *supra*, no abarca la totalidad de los gastos generados en el proceso, ya que no son equivalentes a los gastos de todo el litigio y tienen una interpretación restrictiva, justificada tradicionalmente en el interés de asegurar un acceso más económico para los litigantes. Íd. Es decir, "[n]o se aprobarán gastos innecesarios, superfluos o extravagantes". Garriga, Jr. v. Tribunal Superior, 88 DPR 245, 257 (1963). Por lo tanto, como norma general, los gastos

habituales de las oficinas de los abogados de los reclamantes, como sellos de correo, materiales de oficina y transcripciones de vistas solicitadas por conveniencia, pero no necesarias para los demandantes, no son recuperables como costas. Andino Nieves v. AAA, 123 DPR 712, 716 (1989).

En lo concerniente a los gastos periciales, el Tribunal Supremo ha establecido que para que éstos sean recobrables como costas, le corresponde a la parte que los solicita "**demostrar que el testimonio pericial presentado era necesario para que prevaleciera su teoría y que el perito presentado suplió o contribuyó substancialmente a suplir la necesidad de un perito del tribunal**". Toppel v. Toppel, 114 DPR 16, 21 (1983) (énfasis suplido). No obstante, ha enfatizado el alto foro que:

> Como regla general, la compensación del perito del tribunal, aunque en su origen pueda ser compartida por los litigantes, es recobrable como costas por la parte victoriosa. No sucede lo mismo con la compensación del perito de la parte, pues en este caso la regla general es a la inversa: dicho pago no es recobrable como costas. Sólo por vía de excepción, y cuando las expensas que origine el perito están plenamente justificadas, es que el tribunal, en el ejercicio de su discreción, puede ordenar lo contrario. Íd., pág. 22.

**III.**

En el presente caso, la señora León Santiago nos solicitó la revocación de la *Sentencia* del TPI en la que se declaró "Ha Lugar" la *Moción Solicitando Sentencia Sumaria* presentada por el Hotel Aloft. El segundo señalamiento de error está dirigido a cuestionar la aprobación del *Memorando de Costas* presentado por el Apelado, toda vez que se incluyeron partidas de peritos que no fueron necesarias para sostener su teoría.

Según adelantáramos, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos que obran en el expediente ante el foro *a quo*. Al evaluar las determinaciones de hechos esbozadas por el foro primario, encontramos que los mismos no se encuentran en

controversia por estar basados en evidencia suficiente. Como consecuencia, acogemos las determinaciones de hechos como nuestras:

1) La Sra. Carmen León es mayor de edad.

2) La Sra. Carmen León está incapacitada por el seguro social aproximadamente desde 2018.

3) La Sra. León declaró en su deposición que la incapacidad declarada por el seguro social fue debido a condiciones en los discos cervicales herniados y el hombro izquierdo no lo podía levantar.

4) La fecha de la caída alegada en la demanda es el 29 de octubre de 2021.

5) El día del accidente la Sra. Carmen León llegó al Hotel Aloft con su auto acompañada del Sr. Francisco Alicea.

6) Decidió acudir al Hotel Aloft a comer ya que ella desde antes de la caída había acudido al Hotel Aloft específicamente al Hard Rock Café ubicado en dicho hotel.

7) El día del accidente salió de su casa con el señor de nombre Francisco Alicea y fueron directamente al hotel.

8) Una vez llegaron al hotel se estacionaron en el área destinada para estacionamiento donde hay una rampa en la entrada.

9) Luego entran al hotel por una rampa que ubicaba en la entrada.

10) La rampa de entrada es una ancha y bastante grande, en la cual Sra. León estimaba que podían caber 3 personas a la misma vez y por donde todo el mundo entra.

11) Procedieron a pasar por dicha rampa para llegar a la puerta de entrada y acceso al hotel.

12) Al pasar por el área para llegar a la puerta de acceso ni ella ni su acompañante sufrieron ningún accidente, ni percance, ni pudo ver ninguna condición como hueco u objeto en el lugar.

13) Eventualmente para salir del hotel utilizaron la misma ruta que utilizaron al entrar.

14) En deposiciones la demandante declaró que al salir resbaló y sufrió una caída y la suela de sus zapatos era como de madera.

15) Su versión del accidente en deposición fue que cuando cayó la rampa estaba mojada, pero no sabe cuánto tiempo llevaba el área mojada.

16) Según la versión del accidente en deposición de la Sra. Carmen León la caída ocurrió porque el área estaba resbalosa, pero no sabe qué era lo que provocó que el área estuviera resbalosa ni cuánto tiempo llevaba la condición en el lugar.

17) Al momento de la caída su compañero no resbaló, ni la persona que llenó los documentos del accidente.

18) Luego de la caída, en el área la Sra. Carmen León no vio a nadie resbalar ni nadie se cayó a parte de ella.

19) La suela de los zapatos de la demandante era con su fuera de madera.

20) A la fecha de los hechos el Hotel Aloft contaba con el permiso de uso vigente expedido el 11/25/2020 y con fecha de expiración 11/26/21.

21) Al momento de los hechos alegados en la demanda el Hotel Aloft contaba con un sistema de mantenimiento consistente en:
    a) Limpieza y cuidado del área
    b) De surgir alguna condición eliminarla y/o repararla
    c) Rondas preventivas por los empleados de mantenimiento y guardias de seguridad para inspeccionar las áreas de todo el Hotel y de surgir alguna condición eliminarla y/o corregirla.

Establecido lo anterior, nos dirigimos a analizar los señalamientos de error esgrimidos por la Apelante. En síntesis, la señora León Santiago argumenta que la postura del Hotel Aloft nos invita a disponer del caso, sin tener la información completa de los eventos. Reiteró que se adjudicó la controversia teniendo únicamente en consideración los documentos presentados por el Apelado. Por otro lado, insistió en que le correspondía al Hotel Aloft señalar las contradicciones en su declaración jurada, no al TPI voluntariamente. Incluso, que las contradicciones encontradas no eran medulares para establecer la negligencia en el caso. Sostuvo que, una rampa que carece de un objeto para apoyarse y que es resbalosa, es inherentemente peligrosa. Inclusive, esto no depende de prueba pericial para establecer este hecho.

Conforme reseñáramos en los acápites anteriores, en nuestro ordenamiento jurídico procede dictar sentencia sumaria si conforme a la evidencia presentada, no existe controversia real y sustancial en cuanto a hechos esenciales y pertinentes del caso. 32 LPRA, Ap. V, R. 36.3. Un hecho material es aquel que tiene el potencial de impactar el resultado de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 679. Para ello, el Tribunal debe tener a su disposición todos los hechos necesarios para resolver la controversia. Íd., pág. 678. Esto es, un tribunal no puede disponer de un caso por la vía sumaria cuando existan hechos

fundamentales controvertidos. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168.

Por otra parte, en cuanto a daños y perjuicios se dispone que aquel que por acción u omisión genere daño a otro debido a su negligencia o culpa, está compelido a reparar los perjuicios ocasionados. 31 LPRA sec. 5141. La culpa o negligencia se caracteriza por la ausencia del cuidado adecuado, que se traduce en la omisión de anticipar y prever las consecuencias razonables de un acto. Nieves Díaz v. González Massas, *supra*, pág. 844. Así pues, la compensación por daños y perjuicios procede únicamente cuando se demuestra una conducta negligente o culposa, la relación causal entre dicha conducta y el daño efectivamente sufrido por quien reclama. Íd. pág. 843. Finalmente, la responsabilidad de los dueños de establecimientos comerciales se circunscribe a determinar la existencia de condiciones peligrosas y si las mismas eran de conocimiento de los propietarios o su conocimiento podía imputárseles a éstos. Colón y otros v. K-Mart y otros, *supra*.

Luego de analizar minuciosamente los documentos que obran en el expediente, incluyendo la *Moción en Solicitud de Sentencia Sumaria*, su *Oposición*, la *Dúplica* y la *Moción Reiterando Oposición*, reconocemos que no existe controversia respecto a los hechos materiales y sustanciales que impiden resolver este caso sumariamente. En específico, concordamos con la afirmación del TPI de que carecemos de prueba que evidencie el acto culposo o negligente del Hotel Aloft. Más aún, en lo que respecta a los establecimientos comerciales, no se detallan las condiciones peligrosas existentes, ni que el Apelado tuviera conocimiento o debiera haber sabido sobre la existencia de las mismas. De hecho, al revisar la transcripción de la deposición tomada a la Apelante notamos que no tiene certeza de la existencia de una sustancia en la rampa en la que ocurrió el accidente. A esos fines, expresó que "asumía" y se dio cuenta que "quizás" estaba mojada, puesto que la ropa que llevaba puesta lo estaba. Sin embargo, de la prueba que obra en autos no surgió claramente, tan siquiera, que existiera tal sustancia. Esto porque a la señora León Santiago no le

constaba la existencia de ésta. De hecho, surge de la transcripción de la deposición de la Apelante que en el área en donde ocurrió la caída había grama artificial instalada.

Ahora bien, la señora León Santiago aduce que el Hotel Aloft nos hizo una invitación a disponer del caso sin contar con fotografías o videos del lugar y sin ningún testigo que hubiera presenciado su caída. Señaló que el foro de instancia no contaba con la información de cómo era el lugar del accidente, no observó la fotografía anunciada en evidencia o visitó el lugar de los hechos para realizar una inspección ocular. Sin embargo, su testimonio, en conjunto con el testimonio del Sr. Víctor Vega, gerente del Hotel Aloft, sería suficiente para establecer su causa de acción. Es menester señalar que, en los casos de responsabilidad civil extracontractual, el peso de la prueba le corresponde al promovente de la acción. Es decir, era la Apelante quien debía presentar en su *Oposición,* al menos, fotografías del lugar en donde ocurrió su caída, deposiciones de testigos, documentos referentes a su tratamiento médico o cualquier otra evidencia que controvirtiera los hechos que expuso el Apelado en si *Oposición.*

Sobre la declaración jurada que acompañó la *Oposición,* coincidimos con la determinación del foro primario a los fines de su exclusión. En nuestro ordenamiento jurídico se han adoptado dos (2) modalidades de la doctrina del "sham affidavit", a saber: por omisión y por contradicción. Lugo Montalvo v. Sol Melia Vacation, *supra.* Así pues, el Tribunal Supremo ha establecido que permitir este tipo de declaración jurada es contrario al objetivo que persigue la Regla 36 de Procedimiento Civil, *supra.* SLG Zapata-Rivera v. J.F. Montalvo, *supra.*

Precisamente, al oponerse a la solicitud de sentencia sumaria, la Apelante intentó formular controversias falsas, al realizar una serie de "aclaraciones" que contradicen el tamaño de la rampa, el material de la suela de sus zapatos o la grama artificial ubicada en la rampa, lo cual provocó su caída. Ahora bien, adelantamos que era el deber de la Apelante justificar las aclaraciones o inconsistencias señaladas en su deposición. La

señora León Santiago insiste que para que sea aplicable la doctrina de *sham affidavit* sus contestaciones debían ser inequívocas a preguntas claras, precisas y libres de ambigüedades. Sin embargo, similar a la imputación que le hace al Apelado, esta falla en señalar cuáles son las ambigüedades que alegadamente ocurrieron durante la toma de la deposición, que resultara en el cambio de su testimonio. La mera alegación de que no se le ofreciera ninguna oportunidad de explicar, colocar en contexto, ampliar o responder a las preguntas del abogado sobre las supuestas contradicciones nos resulta insuficiente. El Tribunal Supremo ha sido claro en que la oposición a una sentencia sumaria constituye su día en corte. Por lo que, reiteramos que la declaración jurada constituye un *sham affidavit*, ante la falta de justificación para las aclaraciones posteriores. Estas contradicciones intentan establecer una controversia falsa cuyo objetivo era abstener al TPI de disponer de la controversia mediante la vía sumaria.

Adicionalmente, no podemos pasar por alto el hecho de que dicha declaración jurada fue el único documento que utilizó la señora León Santiago para controvertir los hechos expuestos por el Hotel Aloft en su solicitud de sentencia sumaria. Así pues, ante el hecho indiscutible de que la misma constituye un *sham affidavit*, la *Oposición* presentada por la Apelante carece de documentación alguna que permitiera poner en controversias los hechos materiales expuestos por el Apelado en su solicitud.

En suma, el análisis ponderado del expediente en su totalidad conduce a la conclusión de que la prueba con la que cuenta la señora León Santiago es insuficiente o inadecuada para sostener las alegaciones de la "**Demanda**" y del elemento de negligencia que es esencial a su reclamación, por lo que el foro de instancia no erró al disponer del caso por la vía sumaria. La Apelante tuvo amplia oportunidad para efectuar un descubrimiento de prueba adecuado. Tan es así que se celebró la *Conferencia con Antelación al Juicio* y cuyo informe a quien único identifica como prueba para establecer los elementos de la causa de acción de daños

es la propia Apelante y un testigo hostil, pues es empleado del Apelado. En fin, la señora León Santiago no cumplió con su deber de controvertir adecuadamente los hechos expuestos en la moción de sentencia sumaria que nos ocupa, por tanto, no incidió el TPI al declarar "Ha Lugar" dicha solicitud.

El segundo error está dirigido a atacar la determinación del TPI que le concede la cuantía solicitada por el Hotel Aloft en su *Memorando de Costas.* Ello debido a que el TPI no tuvo manera de evaluar la necesidad de los peritos, dado a que nunca se argumentó sobre los alegados daños sufridos.

El *Memorando de Costas* presentado por el Apelado fue declarado "Ha Lugar" por el foro primario, concediendo todas las partidas solicitadas por el Hotel Aloft. En su solicitud, el Apelado argumenta que las deposiciones fueron necesarias para poder evaluar la veracidad o no de la opinión del perito de la parte demandante. A continuación, detallamos las costas según solicitadas por el Apelado:

| CONCEPTO | CUANTÍA |
|---|---|
| Sellos de Primera Comparecencia | $90.00 |
| Transcripciones de las deposiciones de la señora León Santiago y perito (Anejo I B y C) | $1,544.50 |
| Honorarios pagados al perito de la parte demandante por acudir a deposiciones (Anejo II) | $750.00 |
| Honorarios de perito de parte demandada Dr. Erick Javier (Anejo I A) | $1,600.00 |
| **Total de costas recobrables** | **$3,984.50** |

La Regla 44.1 de Procedimiento Civil, *supra*, no abarca la totalidad de los gastos generados en el proceso, ya que no son equivalentes a los gastos de todo el litigio y tienen una interpretación restrictiva, justificada tradicionalmente en el interés de asegurar un acceso más económico para los litigantes. En lo que respecta a la concesión de costas, no todos los gastos derivados del litigio son reembolsables. Maderas Tratadas v. Sun Alliance *et al.*, *supra*, pág. 935. En lo concerniente a los gastos periciales, el Tribunal Supremo ha establecido que para que éstos sean recobrables como costas le corresponde a la parte que los solicita "demostrar que el

testimonio pericial presentado era necesario para que prevaleciera su teoría y que el perito presentado suplió o contribuyó substancialmente a suplir la necesidad de un perito del tribunal". Toppel v. Toppel, 114 DPR 16, 21 (1983).

A tenor con nuestra función revisora, procedemos a evaluar si las costas fueron concedidas conforme a derecho. La determinación emitida por el TPI concluyó que la Apelante no estableció el acto u omisión culposa o negligente del Hotel Aloft. A su vez, por tratarse de un establecimiento comercial, coligió que la señora León Santiago debió establecer la existencia de una condición de peligrosidad y que ésta era conocida o debió haber sido de conocimiento para el Apelado. La *Sentencia* emitida no dispone ninguna particularidad sobre los peritos mencionados en el *Memorando de Costas*. En ese sentido, debido a que los méritos de la *Sentencia* estuvieron centrados en la ausencia de un acto culposo o negligente, el foro primario no podía evaluar el uso del testimonio pericial como un elemento esencial para la teoría del Apelado. Tan es así, que no se hizo mención de los peritos como parte de los hechos medulares en lo que se fundamentó la solicitud sumaria del Hotel Aloft y que fueron acogidos por el TPI. Dado a que no apreciamos la necesidad de los peritos para la adjudicación del caso, las costas otorgadas se reducen a novecientos setenta dólares ($970.00), detallados a continuación:

| CONCEPTO | CUANTÍA |
|---|---|
| Sellos de Primera Comparecencia | $90.00 |
| Transcripción de la deposición de la señora León Santiago | $880.00 |
| **Total de costas recobrables** | **$970.00** |

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, se *confirma* la *Sentencia* apelada. Asimismo, *modificamos* la *Resolución Interlocutoria* emitida el 18 de diciembre de 2025, a los efectos de reducir la cuantía otorgada por las costas del litigio a novecientos setenta dólares ($970.00), por entender que

la prueba pericial no fue necesaria para que el Apelado pudiera prevalecer en su teoría o que la misma suplió o contribuyó substancialmente a suplir la necesidad de un perito del tribunal. Así modificada, se *confirma* dicho dictamen interlocutorio.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones